Camacho v Pintauro (2022 NY Slip Op 06743)

Camacho v Pintauro

2022 NY Slip Op 06743

Decided on November 29, 2022

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: November 29, 2022

Before: Webber, J.P., Friedman, Kennedy, Mendez, Shulman, JJ. 

Index No. 30506/18 Appeal No. 16724 Case No. 2022-01286 

[*1]Gardenia Camacho, Plaintiff-Respondent,
v
Robert D. Pintauro, et al., Defendants-Appellants.

Dwyer & Taglia, Valhalla (Peter R. Taglia of counsel), for appellants.
Meagher & Meagher, P.C., White Plains (Keith J. Clarke of counsel), for respondent.

Order, Supreme Court, Bronx County (Joseph E. Capella, J.), entered March 21, 2022, which denied defendants' motion for summary judgment dismissing the complaint, or in the alternative, to preclude plaintiff's expert testimony on causation or to hold a Frye hearing (Frye v United States, 293 F 1013 [DC Cir 1923]), unanimously reversed, on the law, without costs, and defendants' motion for summary judgment dismissing the complaint granted. The Clerk is directed to enter judgment accordingly.
Plaintiff began treating with defendant as her primary care physician in September 2013. Her medical history included asthma, COPD, obesity and diabetes. On April 15, 2017, defendant prescribed Bactrim, an antibiotic, to treat plaintiff's chronic cough, but the medication was discontinued at plaintiff's next visit, on April 19, 2017, after she developed a rash. At a follow-up visit on May 3, 2017, plaintiff's rash was resolving but she complained of new pain on the right side of her neck and between her knees and ankles so severe that she could not walk. On May 31, 2017, plaintiff's blood was drawn for a complete blood panel (CBP), revealing a heightened rheumatoid titer. Defendant diagnosed plaintiff with rheumatoid arthritis based on her complaints of bilateral knee pain and the results of her blood work. On June 2, 2017, defendant prescribed methotrexate, an anti-inflammatory, to treat her condition.
Plaintiff was to take methotrexate orally in three 2.5mg pills, for a total dose of 7.5mg once a week for 3 weeks. On June 6, 2017, plaintiff took two pills at different times on the same day and did not take any more pills after that because her foot was beginning to swell. This dosage was less than the recommended 7.5mg one week dose of the medication. On June 12, 2017, plaintiff presented to the hospital complaining of worsening right leg numbness and leg swelling for the prior three days. Plaintiff was admitted with a diagnosis of foot drop. On June 14, 2017, plaintiff was examined by a rheumatologist who assessed her with acute onset foot drop with a mononeuritis multiplex picture. The rheumatologist suspected neuro-sarcoidosis, a chronic disease of the central nervous system, as a possible etiology.
Plaintiff was discharged from the hospital on June 18, 2017. The discharge summary noted that an MRI did not reveal any causes for the foot drop, that a diagnosis of neuro-sarcoidosis was suspected, and it remained an unconfirmed diagnosis through plaintiff's last assessment in July 2020.
At the conclusion of discovery defendant moved for summary judgment. Defendant made a prima facie case of summary judgment through its expert who stated that there was no medical evidence that methotrexate, a drug in use since 1947, causes peripheral neuropathy or a foot drop, either alone or in combination with one of plaintiff's other medications, and opined that foot drop would not have manifested at the single low dose of methotrexate consumed by plaintiff [*2]over the course of one day; the short period that elapsed between this consumption of the drug and the emergence of foot drop, was atypical for a drug-induced peripheral neuropathy; if plaintiff's condition were a drug induced peripheral neuropathy, it would have resolved within weeks of the discontinuance of methotrexate and the fact that plaintiff's condition persisted for years and did not resolve upon discontinuing methotrexate, was a presentation atypical for drug-induced peripheral neuropathy; and plaintiff's presumed diagnosis of sarcoidosis, could be an explanation for her condition.
In opposition to defendants' prima facie showing, plaintiff's expert failed to demonstrate the existence of triable issues of fact by demonstrating that defendants' prescription of the drug methotrexate was a "substantial factor" in causing her claimed injury of "foot drop" (see Mortensen v Memorial Hosp., 105 AD2d 151, 158 [1st Dept 1984]). The expert failed to address or controvert many of the points made by defendants' expert. He did not address or controvert defendant's expert's opinion that 5mg of methotrexate taken in one day could not cause foot drop, or, if it did, why the foot drop did not resolve within weeks of discontinuation of the medication. Plaintiff's expert also failed to address defendant's expert's opinion that the more likely culprit for plaintiff's foot drop was her presumed diagnosis of neuro-sarcoidosis, as indicated in the medical records. Since plaintiff failed to raise a triable issue of fact in opposition to defendant's prima facie showing that methotrexate did not cause plaintiff's claimed
injury, summary judgment should have been granted dismissing the complaint (see Colwin v Katz, 122 AD3d 523, 524 [1st Dept 2014]).
We have considered plaintiff's remaining arguments and find them unavailing. THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: November 29, 2022